IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MARK ANTHONY COMIER, ) | CIVIL ACTION NO. 9:13-2906-JMC-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the Complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on August 18, 2010, alleging disability since April 15, 2007 due to Parkinson's disease, uncontrollable shaking, severe depression, chronic fatigue syndrome (CFS), right leg pain, sleep apnea, hip pain, and back pain. (R.pp. 13, 172, 193). Plaintiff's claim was denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on June 14, 2012. (R.pp. 30-51). The ALJ thereafter denied Plaintiff's claim in a decision issued July 16, 2012. (R.pp. 10-29). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-5).



Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is generally limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court



disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was forty-four (44) years old when he alleges he became disabled, has a high school education with past relevant work experience as a hardware salesperson, a plumber, a pizza maker, and a maintenance supervisor. (R.pp. 24, 172, 194). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months. Additionally, in order to be eligible for DIB, a claimant must show that they were disabled on or before their date last insured. Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th Cir. 2005). Here, Plaintiff's eligibility for disability expired on December 31, 2011. (R.p. 15). Therefore, in order to obtain benefits Plaintiff must establish that his impairments became disabling on or before that date.

After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[1] of status post right leg fractures, arthritis, CFS, post-traumatic stress disorder (PTSD), and depression, which rendered him unable to perform any of his past relevant work, he nevertheless retained the residual functional capacity

---

[1] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).



(RFC) through his date last insured to perform light work[2] with the restrictions that he could only perform postural activities occasionally; could never climb; and was limited to simple, routine, repetitive tasks with no ongoing interaction with the general public, and was therefore not entitled to disability benefits. (R.pp. 15, 18-19, 24-25). Plaintiff asserts that in reaching his decision the ALJ erred in his RFC determination because he failed to perform a function-by-function analysis, failed to fully consider Plaintiff's back and leg conditions, failed to account for the impact of Plaintiff's Parkinson's disease on his ability to use his right arm and hand, and failed to consider the impact of Plaintiff's CFS on his ability to sustain work activity on a regular and continuing basis. Plaintiff also asserts that the ALJ's credibility assessment is not supported by substantial evidence, and that the ALJ erred by improperly discarding an opinion by Dr. Albert Fink concerning Plaintiff's mental impairments.

After careful review and consideration of the arguments presented, for the reasons set forth hereinbelow the undersigned is constrained to agree with the Plaintiff that the ALJ committed reversible error in reaching his RFC determination by failing to fully account for the symptoms of Plaintiff's Parkinson's disease, in particular tremors of Plaintiff's right upper extremity (RUE). Therefore, remand is required for a proper consideration and analysis of this condition.

The ALJ noted in his decision that Plaintiff alleged he suffers from Parkinson's disease, and wrote that he had given Plaintiff "the benefit of the doubt in assessing this condition as a non-severe impairment." (R.p. 16). The ALJ then lumped this finding in with several "minor

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).



medical problems" (this characterization appears to refer not just to Plaintiff's Parkinson's disease, but also to his history of hypertension, hypercholesterolemia, restless leg syndrome (RLS), gout, sleep apnea, chronic sinusitis, and chronic low back pain), and found that there was no documentation that these "problems imposed recurring vocationally restrictive limitations for a period of 12 continuous months," and that these infirmities had "no more than a minimal effect on [Plaintiff's] ability to work." (R.pp. 15-16). Specifically with respect to Plaintiff's Parkinson's disease, the ALJ found there was no evidence of bradykinesia (abnormal slowness of muscular movement), stiffness, postural instability, hypomimia (lack of facial expression with reduced blinking), or decreased strength. In determining that this was a "non-severe" impairment, the ALJ also concluded that even though treatment notes from December 2011 indicated that Plaintiff was taking pills for Parkinson's disease, he had not followed up with his neurologist. (R.p. 16). However, other than referencing the fact that Plaintiff testified that he suffers from tremors, the ALJ does not discuss the evidence relating to tremors or how this infirmity could effect Plaintiff's RFC.

A review of the record, however, shows that as far back as a visit to the Veterans Administration (VA) gastroenterology clinic on January 28, 2009, Plaintiff's active medication list included Ropinirole HCL (also known by the trade name Requip) for Parkinson's disease. (R.pp. 464-465). On February 2, 2009, family nurse practitioner (FNP) Melinda F. Smith at the VA Primary Care Clinic wrote that Plaintiff had "noted head and hand tremor." (R.pp. 461-462). On December 23, 2009, Dr. Shutish Patel at the VA Neurology Outpatient Clinic found no bradykinesia, stiffness, postural instability, or hypomimia on examination; Plaintiff's strength was noted to be 5/5; and deep tendon reflexes were brisk throughout. However, Dr. Patel also noted "[r]est tremor RUE, to the lessor extent on the left," and assessed Plaintiff with, among other diagnoses, familial



Parkinson's disease. (R.p. 428). On March 24, 2010, Dr. Patel's examination revealed no bradykinesia or stiffness, no hypomimia, and 5/5 strength, but that again Plaintiff had a resting tremor of the right upper extremity and to the lessor extent on the left. (R.p. 425). On June 4, 2010, Plaintiff reported that he had stable head and hand tremor, his head tremor occurred when he got really tired, and Requip (prescribed for RLS) seemed to "quiet shaking inside his body." FNP Smith noted that Plaintiff had a stable head and hand tremor. (R.pp. 420-424).

During a disability interview in August 27, 2010, the Social Security field office interviewer noted that Plaintiff "kept shaking during the interview, very uncontrollable. He had problems using his hands because they constantly would shake." (R.p. 202). On September 22, 2010, Dr. Patel again wrote that Plaintiff had a rest tremor of his RUE (specifically a moderate, rhythmic, intermittent tremor in Plaintiff's right hand), and to a lesser extent on Plaintiff's left side. No bradykinesia, stiffness, postural instability, or hypomimia were noted; strength was 5/5; and deep tendon reflexes were brisk throughout. Exaggerated reflexes were noted, and a brain CT was noted to be within normal limits. However, Plaintiff was again prescribed Requip for his Parkinson's diagnosis and the tremor in his right upper extremity. (R.pp. 409-411). At the VA Primary Care Clinic on November 15, 2010, FNP Smith noted that Plaintiff had a mild tremor of his head and a resting pill rolling tremor of his right hand. (R.pp. 405-408). During a consultative psychiatric examination on December 4, 2010, Dr. Yunus Pothiawala (a psychiatrist) observed that Plaintiff had tremors of his right upper extremity. (R.p. 845). On February 8, 2011, FNP Smith noted that Plaintiff had a resting pill rolling tremor of his right hand. (R.pp. 388-391). Plaintiff reported to FNP Smith on December 19, 2011, that despite taking medications there was a progression of his head and hand tremor and he could not control his tremors much anymore. (R.p. 996). FNP Smith



noted that Plaintiff had Parkinson's disease and that "per neuro taking pills but hasn't followed up with neuro."  (R.p. 997).

Regulations require that an ALJ "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe," in determining the claimant's RFC. 20 C.F.R. § 404.1545(e); see also SSR 96–8p ["In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"].  Here, although the record appears to contain substantial evidence (as that term is defined in the applicable caselaw) to support the ALJ's finding that Plaintiff's Parkinson's disease had not resulted in bradykinesia, stiffness, postural instability, hypomimia, or decreased strength, there is certainly evidence of tremors in Plaintiff's RUE that could affect Plaintiff's ability to perform handling or fine manipulation.  Again, however, the ALJ did not discuss this evidence, and did not assign any limitations based on this condition.  Cf. Bailey v. Barnhart, No. 01-3474, 2002 WL 1401225 at **4 (7th Cir. July 26, 2002) [case remanded where ALJ did not adequately explain her rationale for discounting the findings of plaintiff's physicians]; Morales v. Apfel, 225 F.3d 310, 317-318 (3d Cir. 2000) [ALJ must explicitly weigh the evidence and explain his rejection of the medical opinion of a treating physician].  Compounding this error, all of the jobs that the ALJ found Plaintiff could perform involve significant handling.

Specifically, the ALJ found that Plaintiff was not disabled because he could perform the jobs of hand packer, production inspector and garment folder.  The Dictionary of Occupational Titles ("DOT")[3] provides that each of these jobs, as to things, involve "significant" handling.

---

[3]The DOT is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy." Burns
(continued...)



Additionally, the DOT notes that the job of production inspector (DICOT 222.687-042),[4] involves frequent handling and occasional fingering, the job of garment folder (DICOT 789.687-066) involves constant handling and fingering, and the job of hand packer (DICOT 920.687-166)[5] involves constant handling.[6]  Therefore, the ALJ's failure to appropriately discuss and evaluate the evidence relating to Plaintiff's RUE tremor was error under the facts of this case.  Further, his finding that Plaintiff could perform the jobs identified in the decision with this impairment is not supported by substantial evidence in the case record.  Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

The Commissioner argues that the ALJ's RFC findings are supported by substantial evidence because the state agency physicians who reviewed Plaintiff's records opined that he could

---

[3](...continued)
v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002).  "[T]he DOT, in its job definition, represents approximate maximum requirements for each position rather than the range."  See Fenton v. Apfel, 149 F.3d 907, 911 (8th Cir. 1998).

[4]The ALJ and the parties refer to this job as production inspector.  The DOT number cited lists this job as "inspector, handbag frames."  DICOT 222.687.042.

[5]The ALJ and the parties refer to this job as a hand packer.  The DOT number cited lists this job as "shoe packer."  DICOT 920.687-166.

[6]Significantly, at the hearing the ALJ asked the VE to consider a claimant with the same restrictions as previously found, but who also was restricted to occasional handling, in response to which the VE stated that only seven percent of DOT jobs allowed for occasional handling, and identified one position (that of a fire watcher) that such a claimant could perform.  (R.pp. 47, 49).  However, the ALJ did not include occasional handling in the RFC (even assuming Plaintiff could perform occasional handling with RUE tremors), nor did he identify fire watcher as one of the jobs which Plaintiff could perform.  See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989)[In order for a vocational expert's opinion to be helpful and relevant, it must be "in response to proper hypothetical questions which thoroughly set out all of claimant's impairments"]; Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) [hypothetical question submitted to the VE must state the claimant's impairments with precision].



perform a range of medium work and that the evidence did not support Plaintiff's allegations of Parkinson's disease. The state agency physicians wrote, in the "RFC - Additional Explanation" of the Disability Determination Explanation, that there was "no documentation" to support Plaintiff's allegation of Parkinson's disease. (R.pp. 61, 76). However, the VA medical records contain a diagnosis of Parkinson's disease, medication was prescribed for Parkinson's disease, and there are numerous references by providers noting RUE tremors. Therefore, even if the ALJ had found that Plaintiff did not have Parkinson's disease,[7] such a finding would not be supported by substantial evidence. Additionally, while the Commissioner also asserts that Plaintiff concedes he has not carried his burden of proof regarding his ability to use his right arm, Plaintiff's only admission in his brief is that it is not clear exactly how much use he had of his right arm during the relevant period; he does not concede that he failed to carry his burden, as he also states that "[i]t is clear....that [the use of his right arm] was compromised, likely greatly." Plaintiff's Brief, ECF No. 15 at 17, n.1.[8] As noted above, there is ample medical evidence that Plaintiff had RUE tremors.

        Plaintiff also completed an activities of daily living report on September 1, 2010, in which he stated that on some days he shook too much and was completely exhausted, had to be careful shaving due to his shaking, and that his ability to perform activities depended on a number

---

[7] The ALJ did not find that Plaintiff did not have Parkinson's disease; rather, his finding was that this was a "non-severe" impairment. (R.p. 16).

[8] The Commissioner also argues that medical records indicated Plaintiff was taking Requip with good symptom control, such that Plaintiff's symptoms were not disabling. However, as discussed above, the medical notes indicate that Plaintiff showed tremor upon examination, despite use of Requip. In any event, the reference to good symptom control may refer to Plaintiff's RLS, not his RUE tremors. Requip was also prescribed for Plaintiff's RLS, and Dr. Patel noted on two occasions that "man with RLS here for recheck. He has been on requip...w/good [symptom] control." (R.pp. 425, 428)

9



of factors including specifically whether he was "shaking". (R.pp. 204, 205, 209). Additionally, Plaintiff testified at the hearing (June 14, 2012) that he had been diagnosed with Parkinson's disease and had tremors and shaking on his right side from his head down to his neck, his right shoulder out to his hand, and just under his shoulder blade. He stated that the tremors had progressed over the previous year to eighteen months such that he shook even when taking medication. Plaintiff testified that his tremors progressed from his pinky and adjacent finger shaking to having his whole hand shake and that little twinges in his neck and shoulder progressed to bouncing. He stated that his medication brought down his tremors, but they still were present. Plaintiff further testified that his disease caused him to drop a lot of coffee cups and his handwriting had gotten "really bad." (R.pp. 42-43). Although the ALJ discounted Plaintiff's credibility, finding that Plaintiff's symptoms were not credible to the extent they were inconsistent with the RFC found by the ALJ; (R.p. 23); the objective evidence in the medical record supports Plaintiff's testimony that he suffers from RUE tremors. The ALJ did not make a finding that Plaintiff does not suffer from RUE, address in any meaningful way the extent of this limitation, or (alternatively) include any restrictions in the RFC to address this condition.

      The ALJ's failure to set forth his reasons for (apparently) rejecting medical evidence of Plaintiff's right upper extremity tremors, or to explain how he reached the RFC he did and determined that Plaintiff could perform jobs requiring significant handling even though Plaintiff suffers from this condition, requires reversal of the decision. Cotter v. Harris, 642 F.2d 700, 705 (3rd Cir.1981) [listing cases remanded because of ALJ's failure to provide explanation or reason for rejecting or not addressing relevant probative evidence]. With respect to Plaintiff's remaining claims of error, on remand the ALJ will be able to consider and re-evaluate the evidence in toto as part of



the reconsideration of this claim.  Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted de novo].

## Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for the administrative action as set forth hereinabove, and for such further administrative action as may be necessary.  See Shalala v. Schaefer, 509 U.S. 292 (1993).

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

January 8, 2015
Charleston, South Carolina



11

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

